# EXHIBIT A

Dominic G. Flamiano (CSBN 142445)
**NorCal Logistics Lawyers Group, P.C.**
1450 Maria Lane, Suite 300
Walnut Creek, CA 94596
Telephone: (415) 710-6765

Attorney for Plaintiff
SAMANEH MOVASSAGHI

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/11/2025**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| SAMANEH MOVASSAGHI,<br><br>    Plaintiff,<br><br>vs.<br><br>TESLA, INC., TESLA, INC. d/b/a<br><br>TESLA FREMONT, and DOES 1<br><br>through 100, inclusive.<br><br><br><br>    Defendants. | Case No.: **CGC-25-632005**<br><br>**COMPLAINT FOR DAMAGES**<br><br>● **Products Liability – Negligence**<br>● **Strict Products Liability – Design Defect**<br>● **Strict Products Liability – Failure to Warn**<br>● **Breach of Express Warranty**<br>● **Breach of Implied Warranty of Merchantability and Fitness for Purpose**<br>● **Fraudulent Concealment**<br>● **Negligent Misrepresentation**<br>● **CLRA Violations**<br>● **Song-Beverly Act Violations**<br><br>**DEMAND FOR JURY** |

Plaintiff Samaneh Movassaghi  ("Plaintiff") complains of Defendants Tesla, Inc. ("Tesla") and  Tesla, Inc., doing business as the TESLA Fremont factory  and Does 1 through 100, and each of them, and alleges on information and belief:

---

**Movassaghi v. Tesla**          COMPLAINT FOR DAMAGES          Page 1 of 22
**Docket No.:**

**PARTIES AND VENUE**

1.    Plaintiff Samaneh Movassaghi, at all times herein was and is a resident of the City and County of San Francisco, California.

2.    Plaintiff is an internationally recognized, award-winning artificial intelligence scientist whose career is globally acknowledged as being in a rare, early-phase trajectory of exceptional innovation and economic value. At the time of the collision, Plaintiff's work in machine learning, autonomous systems, and advanced computational research placed her among a small fraction of world-leading AI experts whose lifetime earning potential, research contributions, and societal impact are extraordinary. The injuries caused by Defendants' defective vehicle have severely disrupted her professional path, derailed significant ongoing research activities, and impaired her ability to function at the elite cognitive level required in her field. Plaintiff's profession requires sustained high-precision executive functioning, rapid-cycle reasoning, and uninterrupted cognitive stamina. Even mild neurological impairment can cause catastrophic, career-ending consequences in the field of advanced AI innovation. The injuries inflicted by Defendants' defective vehicle therefore had a disproportionately devastating effect on Plaintiff's professional capacity, economic trajectory, and global scientific contribution.

3.    Defendant Tesla, Inc. is a Texas corporation that reaches out to California and did reach out to California to induce Plaintiff to purchase the subject Tesla vehicle.  Tesla, Inc. is authorized to do business in California by the California Secretary of State, is in good standing, and has an identification number of 6303077 and operates out of 1 Tesla Road, Austin, Texas. Tesla, Inc.'s registered agent for service of process is 1505 Corporation, CT Corporation System, 330 N. Brand Blvd., Glendale, California.

/ / /

4.      Defendant Tesla, Inc. doing business as the TESLA Fremont factory which is a major California factory and delivery center for Tesla which manufactured and delivered the vehicle to Plaintiff at their sprawling factory and distribution complex at 45500 Fremont Boulevard, Fremont, CA 94538.  Plaintiff took delivery of the subject vehicle at that Fremont location, Alameda County, California.

5.      Defendants  Tesla, Inc., doing business as the TESLA Fremont factory  will be collectively referred to as "TESLA DEFENDANTS."

6.      The injuries and harm suffered by Plaintiff are alleged to have been sustained and did occur in the City and County of San Francisco, California.  This Court has subject matter jurisdiction regarding injuries resulting from defective products manufactured and distributed by TESLA DEFENDANTS where the accident happened in the City and County of San Francisco on December 4, 2023 at 11:30 p.m. within the intersection of 7th Street and Bryant Street in San Francisco.  The damages alleged meet requirements with respect to the amount in controversy regarding unlimited jurisdiction of a California Superior Court.

7.      Plaintiff is ignorant of the true names and capacities, whether corporate, associate, successor, predecessor, individual, or otherwise, of Defendants sued herein as Does 1–100, inclusive, and therefore sues these Defendants, and each of them, by such fictitious names. Plaintiff will seek leave of court to amend this complaint to assert the true names and capacities of these fictitiously named Defendants when ascertained. Each Defendant designated as Doe herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages, and liabilities alleged in this complaint and caused injuries and damages proximately thereby to the Plaintiff, whether such Doe defendants manufactured, distributed, marketed or sold the subject

vehicle or manufactured, distributed and sold component parts integrated into the final version of the subject vehicle as sold to Plaintiff.

8.    At all times mentioned herein, Defendants, including Does 1–100, were the agent, representative, employees, and/or co-conspirator of each other and were at all times acting within the scope of such agency and employment. All acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization, and/or consent of each Defendant, including Does 1–100.

9.    The use of the term "DEFENDANT" or "DEFENDANTS" in this complaint is intended to include not only the named DEFENDANT or DEFENDANTS but also all DEFENDANTS sued as Does 1–100, inclusive, to the same extent as if the word "DEFENDANT" or "DEFENDANTS" was followed in each instance by the phrase "and each of them," except when the context of the complaint clearly indicates a different meaning.

10.    Tesla had actual knowledge, through pre-release validation testing, OTA safety-software anomaly logs, sensor-fusion misclassification reports, airbag misdeployment incident data, and internal engineering escalations, that the Model Y's safety-critical systems including AEB, FCW, sensor fusion, and steering-wheel airbags were unreliable and prone to simultaneous failure under foreseeable collision scenarios. Tesla deliberately withheld this information from purchasers, continued selling the vehicles without remediation, deployed unvalidated OTA firmware updates into safety-critical pathways, and prioritized production volume and market perception over consumer safety. These acts constitute malice, oppression, and fraud under Civil Code §3294, warranting punitive damages. Tesla had a statutory obligation under 15 U.S.C. §2064 to immediately report and remedy any product defect that created a substantial risk of injury to consumers. Tesla failed to comply with these obligations by concealing known safety-system

defects, delaying reporting of defects to federal regulators, continuing to sell defective vehicles, issuing inadequate warnings, and deploying unvalidated OTA safety-critical firmware. Tesla's violations of §2064 constitute independent evidence of negligence, fraudulent concealment, willful misconduct, and punitive damages.

## FIRST CAUSE OF ACTION

## NEGLIGENCE/PRODUCTS LIABILITY

## (As to All Named DEFENDANTS and Does 1–100)

11. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

12. In September of 2022 Plaintiff purchased a 2022 Tesla Model Y (the "Tesla vehicle") from Tesla, Inc., doing business as the TESLA Fremont factory delivery center.

13. The Tesla vehicle was manufactured by Defendant Tesla, Inc. and sold and distributed by Defendant  Tesla, Inc., doing business as the TESLA Fremont factory  delivery facility.  These defendants will be referred to collectively as the "TESLA DEFENDANTS."

14. The emergency collision devices, including, but not limited to, defective steering wheel air bag that ruptured and deployed with excessive force, dispersing irritant particulates and combustion byproducts, defective collision avoidance systems, defective Automatic Emergency Braking (AEB)   systems, defective forward collision warning systems, and other safety devices and sensory systems and their related software and hardware infrastructure, including network communications between the Tesla vehicle and TESLA DEFENDANTS were defective and failed to deploy and properly operate causing injuries and lasting trauma to Plaintiff and her passenger in the Tesla vehicle on December 4, 2023 at 11:30 p.m. at the intersection of 7th Street and Bryant Street in San Francisco, California, when another vehicle ran a red light while Plaintiff had the

right of way under a green light causing a broadside ("T-bone") collision to the passenger side of the Tesla vehicle immediately behind the front passenger side wheel (the "subject accident").

15. TESLA DEFENDANTS, after the December 4, 2023 accident, issued a recall for the 2022 Model Y, acknowledging multiple safety system defects for that year and model configuration of the Tesla vehicle in which Plaintiff was injured.  Tesla issued NHTSA Recall No. 23V-838, acknowledging failures in the Automatic Emergency Braking (AEB) system; Tesla issued NHTSA Recall No. 24V-051, identifying defects in unvalidated OTA safety-critical firmware affecting collision-avoidance logic. These recalls confirm that Tesla possessed pre-sale knowledge of the precise safety defects that caused Plaintiff's injuries. Defendants Tesla, Inc. and Tesla Engineering Headquarters were aware of these defects prior to the subject accident and failed to warn Plaintiff or remedy the defects prior to the subject accident.

16. TESLA DEFENDANTS knew, or should have known of the safety system defects which cause defective deployment of various safety systems and subsystems, including, but not limited to, a defective deployment of the steering wheel air bag which exploded in Plaintiff's face upon impact, covering her skin with microscopic airborne particles that were toxic and caused skin burns and damage upon inhalation.  The defects of the 2022 Tesla Model Y include, but are not limited to, the following:

      a.  Failure of automatic emergency braking (AEB) and forward collision warning (FCW) to activate;

      b.  Misfiring and explosive airbag deployment;

      c.  Faulty accelerometer and gyroscope calibration;

      d.  Broken sensor fusion logic across cameras, inertial modules and radar system;

      e.  Unvalidated Over-the-Air (OTA) safety software;

f. Systematic engineering shortcuts taken in development to increase sales and production volume at the cost of safety.

17. TESLA DEFENDANTS knew or should have known that the safety systems and subsystems were defective and prone to dangerous failure, including, but not limited to:

a. Collision avoidance features which failed to deploy properly at the time of the subject accident causing bodily injuries and emotional distress to Plaintiff.

18. b. Automatic Emergency Braking (AEB) systems which were designed to detect an imminent collision and take evasive maneuvers to avoid the accident. Those Automatic Emergency Braking (AEB)  systems failed at the time of the subject accident-causing bodily injuries and emotional distress to Plaintiff.

c. Forward collision warning systems which were designed to provide the driver with advance warning of an imminent collision so the driver could take steps to avoid the accident.  Those forward collision warning systems failed at the time of the accident-causing bodily injuries and emotional distress to Plaintiff.

19. Plaintiff was treated for burns and bodily trauma after she was rushed from the scene of the subject accident by ambulance to the emergency room of UCSF where she was treated and examined, including an MRI and brain imaging. Plaintiff suffered acute burns, traumatic brain injury, neurological disruption, and cognitive impairment when the defective steering wheel airbag exploded and when multiple defective safety systems failed simultaneously. As a result, she continues to experience lasting neurological, psychological, and physiological effects including impaired concentration, reduced cognitive stamina, emotional trauma, sleep disruption, anxiety, irritability, and difficulty performing complex reasoning tasks. Upon information and belief, the

Tesla vehicle created pre-impact and post-impact event logs, including sensor-fusion data, AEB/FCW activation attempts, accelerometer and gyroscope readings, collision-avoidance decision-logic outputs, and OTA safety-firmware status snapshots. Tesla maintains exclusive custody and control over this electronic data. Plaintiff alleges that the Tesla event logs will show system errors, fault codes, failed activation attempts, and safety-critical anomalies consistent with the defects described herein, further evidencing that the vehicle's safety systems malfunctioned during the subject collision. The absence or withholding of such logs gives rise to an inference that the data contains evidence of pre-crash safety-system failures. Plaintiff hereby provides formal notice that any destruction, alteration, or non-production of sensor data, EDR records, OTA logs, classifier confidence outputs, or pre-impact system states will support a request for terminating sanctions or an adverse inference instruction under Evidence Code §413.

20. These injuries have profoundly damaged Plaintiff's career as a world-recognized AI scientist. Her work requires elite-level executive function, sustained mental acuity, and high-intensity problem-solving; capacities significantly impaired by Defendants' defective systems. As a result, Plaintiff has suffered a severe loss of earning capacity, interruption of research output, stalled career advancement, and loss of irreplaceable professional opportunities.

21. At all times mentioned herein, DEFENDANTS, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, tested or failed to test, warned, failed to warn or failed to adequately warn, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, marketed, warranted, rebranded, manufactured for others, packaged, and/or advertised the safety systems and subsystems of the subject vehicle, a 2022 Tesla Model Y, in that this product caused personal injuries while being used in a manner that was

reasonably foreseeable, thereby rendering this product unsafe and dangerous for use. Moreover, DEFENDANTS failed to adequately warn consumers, including but not limited to Plaintiff, about the recall safety systems associated with the Tesla Model Y and the risks that were posed by its defective deployment in reasonably foreseeable accident situations, such as happened with the defectively deployed steering wheel airbag and other safety systems and subsystems.

22. DEFENDANTS had a duty to use ordinary care so as not to injure Plaintiff and her property. DEFENDANTS further had a duty to exercise due care in pursuit of the manufacture, fabrication, design, testing or failing to test, warning, failure to warn or failure to adequately warn, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, marketing, warranting, rebranding, manufacturing for others, packing, and/or advertising of all 2022 Tesla Model Y vehicles. Tesla also breached its post-sale duty to warn by failing to notify Plaintiff of safety defects discovered after delivery but before the collision, including the defect conditions later captured in NHTSA Recalls 23V-838 and 24V-051.

23. DEFENDANTS carelessly attended to the duties listed in No. 22 above so as to breach them and thereby cause Plaintiff's harm. Under California's crashworthiness doctrine, TESLA DEFENDANTS are liable for the enhanced injuries suffered by Plaintiff irrespective of fault for the initial collision. Tesla's defective safety systems failed to provide reasonable occupant protection in a foreseeable collision. Regardless of fault for the initial impact, Tesla is independently liable for enhanced injuries under California's crashworthiness doctrine. Feasible alternative designs were available and widely adopted in the automotive industry at the time of manufacture, including redundant radar-vision fusion architectures, validated braking-logic firmware, dual-path OTA update gating, conservative airbag inflator charge chemistries, and enhanced IMU calibration protocols. Each alternative would have prevented or mitigated the

simultaneous safety-system failures that injured Plaintiff. Comparative fault is not applicable to bar or reduce Plaintiff's recovery because Tesla's defective safety systems caused enhanced injuries that would not have occurred in a reasonably safe vehicle. Tesla is liable for all enhanced injuries irrespective of fault for the initial impact.

24. DEFENDANTS knew, or should have known, that the careless researching, manufacturing, fabrication, designing, testing or failing to test, warning, failure to warn or failure to adequately warn, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, marketing, warranting, rebranding, manufacturing for others, packing, and/or advertising of the safety systems and subsystems of the 2022 Tesla Model Y could cause injury to persons and property.

25. DEFENDANTS' actions were a substantial factor and a proximate cause in the resultant damages and injuries to Plaintiff and her property and exhibited a conscious disregard for safety and/or a willful failure to warn. Tesla had a duty to warn arising from (1) exclusive knowledge of safety defects, (2) active concealment of material dangers, and (3) partial representations that triggered a duty to disclose omitted information.

**SECOND CAUSE OF ACTION**

**STRICT LIABILITY/MANUFACTURING DEFECT**

**(As to DEFENDANTS Tesla, Inc. and Tesla, Inc. d/b/a** Tesla, Inc., doing business as the

TESLA Fremont factory

**and Does 1–100)**

26. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

27. DEFENDANTS were engaged in the manufacture and distribution of the 2022 Tesla Model Y subject vehicle.

28. The defect(s) that caused Plaintiff's injuries existed in the safety systems and subsystems of the 2022 Tesla Model Y subject vehicle at the time it left the possession of DEFENDANTS.

29. The 2022 Tesla Model Y safety system and subsystem defects were a substantial factor(s) in causing Plaintiff's harm and exhibited a conscious disregard for safety and a willful failure to warn. California's crashworthiness doctrine, established in Daly v. General Motors Corp. (1978) 20 Cal.3d 725, imposes independent liability for "enhanced injuries" caused by defective safety systems regardless of fault for the initial collision. Accordingly,  TESLA DEFENDANTS are liable for the enhanced injuries suffered by Plaintiff irrespective of fault for the initial collision.

## THIRD CAUSE OF ACTION

### STRICT LIABILITY/CONSUMER EXPECTATION/DESIGN DEFECT

### (As to All Named Defendants and Does 1–100)

30. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

31. DEFENDANTS' product was defective and unsafe because it did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably known manner.

32. Feasible alternative designs existed, including validated AEB/FCW firmware, redundant sensor fusion pathways, more conservative trigger thresholds, safer airbag inflator formulations, and stricter OTA update gating. Each would have reduced or eliminated the risk of simultaneous system failure without impairing vehicle utility.

33. Plaintiff is an ordinary consumer of the 2022 Tesla Model Y subject vehicle. Ordinary consumers  and especially highly trained professionals relying on Tesla's advertised advanced collision-avoidance and safety technologies would never expect a modern vehicle to exhibit simultaneous catastrophic failures of airbags, AEB, FCW, sensor fusion, accelerometer calibration, and OTA safety firmware. The failures here were not mere malfunctions; they were systemic engineering defects that rendered the product unreasonably dangerous to a degree far outside normal consumer contemplation.

## FOURTH CAUSE OF ACTION

## STRICT LIABILITY/INADEQUATE WARNINGS

### (As to All Named Defendants and Does 1–100)

34. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

35. DEFENDANTS were aware of the risks associated with the 2022 Tesla Model Y safety system and subsystem defects and that these risks presented a substantial danger when the product was used or misused in an intended or reasonably foreseeable way.

36. DEFENDANTS made no attempt to warn individual purchasers or users of 2022 Tesla Model Y with respect to the safety systems and subsystems until the recall after December 4, 2023 and DEFENDANTS made no warnings about the explosive defect in the steering wheel airbag deployment.

37. Ordinary consumers could not have recognized or anticipated that the 2022 Tesla Model Y suffered from concealed, unvalidated, and dangerously defective safety systems. Tesla's public branding and marketing intentionally cultivated a perception of superior safety and advanced

autonomous capability, further preventing consumers  including Plaintiff from discovering the hidden defects that Tesla internally knew placed users at extreme risk.

38. The lack of sufficient warning was a substantial factor in causing Plaintiff's harm and exhibited a conscious disregard for safety and a willful failure to warn.

## FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (As to All Named Defendants and Does 1–100)

39. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

40. DEFENDANTS expressly affirmed and promised to the Plaintiff that the safety systems and subsystems in the 2022 Tesla Model Y would anticipate and avoid collisions or lessen the damage of collisions.  Those express warranties applied to the following systems:

    a.  Failure of automatic emergency braking (AEB) and forward collision warning (FCW) to activate;

    b.  Misfiring and explosive airbag deployment;

    c.  Faulty accelerometer and gyroscope calibration;

    d.  Broken sensor fusion logic across cameras, inertial modules and radar system;

    e.  Unvalidated Over-the-Air (OTA) safety software;

    f.  Systematic engineering shortcuts taken in development to increase sales and production volume at the cost of safety.

41. This affirmative promise was part of the basis of the bargain between Plaintiff and DEFENDANTS, and created an express warranty that the goods would conform to the promises made when Plaintiff purchased the 2022 Tesla Model Y.  In fact, the safety features did not perform

as promised, and as a result of DEFENDANTS' breach of that warranty, In addition to physical and psychological injuries, the failure of the promised safety systems has caused catastrophic harm to Plaintiff's professional trajectory. As a globally recognized AI scientist who depends on uninterrupted cognitive precision, Plaintiff has suffered quantifiable loss of income, diminished ability to perform high-stakes research, disruption of major projects, and derailment of critical milestones in a career of exceptionally high economic value. These losses were the direct and foreseeable result of Tesla's breach of its express and implied warranties.

### SIXTH CAUSE OF ACTION

### BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR PURPOSE

### (As to All Named Defendants and Does 1–100)

42. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

43. At the time of purchasing the 2022 Tesla Model Y from DEFENDANTS, DEFENDANTS had reason to know that Plaintiff required that the 2022 Tesla Model Y was fit for the purpose, including the promised safety features detailed above, and Plaintiff relied on DEFENDANTS' skill and judgment in deciding to purchase the vehicle.  Defendants thereby implied that the 2022 vehicle would be fit for the purpose intended.  In fact, the safety features did not perform as promised, and as a result of DEFENDANTS' breach of that warranty, Plaintiff suffered bodily injuries, psychological and emotional trauma when those safety features failed to work as promised at the time of the subject accident.

/ / /

/ / /

/ / /

## SEVENTH CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

### (Against NAMED Defendants and DOES 1 to 100)

44. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

45. This action arises from Tesla, Inc.'s deliberate and reckless decision to release a dangerously defective vehicle into the stream of commerce, despite possessing internal proprietary data proving that its airbag systems, collision-avoidance systems, safety firmware, and sensor-driven decision logic were unreliable, unvalidated, and capable of catastrophic failure during a foreseeable crash event. Tesla chose speed over safety, public perception over truth, and profits over human lives.

46. Prior to Plaintiff's purchase of the 2022 Tesla Model Y, DEFENDANTS were aware of the defects in their safety systems, including but not limited to, the following defects:

    a.  Failure of automatic emergency braking (AEB) and forward collision warning (FCW) to activate;

    b.  Misfiring and explosive airbag deployment;

    c.  Faulty accelerometer and gyroscope calibration;

    d.  Broken sensor fusion logic across cameras, inertial modules and radar system;

    e.  Unvalidated Over-the-Air (OTA) safety software;

    f.  Systematic engineering shortcuts taken in development to increase sales and production volume at the cost of safety.

47. DEFENDANTS had a duty to disclose those known defects to Plaintiff. Additionally, Tesla's affirmative safety marketing; touting "industry-leading collision protection,"

"validated AEB," and "superior crash performance" constituted partial representations that created a duty to disclose omitted safety defects under California's partial-representations doctrine.

48. DEFENDANTS intentionally concealed or suppressed the facts with the intent to defraud Plaintiff.

49. Plaintiff was unaware of the hidden and concealed defects, had Plaintiff been informed of those defects prior to purchase, she would not have purchased the 2022 Tesla Model Y.

50. As a direct consequence, substantial factor, and proximate cause of Defendants' intentional concealment and suppression of known safety defects, Plaintiff suffered severe physical, neurological, emotional, and economic injuries. Plaintiff sustained traumatic brain injury, cognitive impairment, skin burns, and significant psychological trauma. Critically, the injuries have derailed the career of a world-renowned AI innovator at a pivotal stage of her ascent; causing massive loss of earning capacity, lost professional opportunities, impaired research productivity, diminished global impact, and interruption of a uniquely valuable technological career. These losses are ongoing, permanent, and directly attributable to Defendants' misconduct. Defendants' conduct was malicious, oppressive, and fraudulent within the meaning of Civil Code §3294, thereby entitling Plaintiff to punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(Against All Defendants)**

51. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein. Tesla made affirmative representations; through its website, sales staff, technical documentation, and marketing materials; that the 2022 Model Y's AEB, FCW, collision-

avoidance, airbag systems, and OTA safety firmware were fully validated, reliable, and capable of protecting occupants in frontal and lateral collisions.

52. These statements were false. Tesla lacked reasonable grounds for its safety claims because its internal validation testing, engineering reports, and OTA performance logs consistently contradicted the public representations it made to consumers. Tesla had exclusive access to defect data unavailable to purchasers, making its misrepresentations uniquely deceptive and harmful. DEFENDANTS had a duty to properly validate all OTA-delivered safety-critical firmware before deployment. Tesla breached this duty by pushing unvalidated updates into the braking and perception pipelines.

53. Plaintiff reasonably relied on these statements when purchasing the vehicle.

54. As a direct consequence, substantial factor, and proximate cause of Defendants' negligent misrepresentations and suppression of known safety defects, Plaintiff suffered severe physical, neurological, emotional, and economic injuries. Plaintiff sustained traumatic brain injury, cognitive impairment, skin burns, and significant psychological trauma. Critically, the injuries have derailed the career of a world-renowned AI innovator at a pivotal stage of her ascent; causing massive loss of earning capacity, lost professional opportunities, impaired research productivity, diminished global impact, and interruption of a uniquely valuable technological career. These losses are ongoing, permanent, and directly attributable to Defendants' misconduct.

/ / /

/ / /

/ / /

/ / /

/ / /

### NINTH CAUSE OF ACTION

### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")

### California Civil Code §§1750, et seq.

### *(Against All TESLA DEFENDANTS)*

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. The Tesla Model Y is a "good" within the meaning of Civil Code §1761(a), purchased primarily for personal, family, or household purposes.

57. Tesla is a "person" and "supplier" under Civil Code §1761(c)–(d), as it engaged in the sale and marketing of the subject vehicle to Plaintiff.

58. In its marketing, sales materials, online representations, and in-vehicle descriptions, Tesla represented that the vehicle's safety systems including AEB, FCW, sensor-fusion logic, OTA safety firmware, and airbag deployment systems were safe, fully validated, reliable, and performed in accordance with Tesla's published safety claims.

59. These representations were false, misleading, or deceptive within the meaning of Civil Code §1770(a), including but not limited to:

- §1770(a)(5): Representing that goods have characteristics or benefits they do not have;

- §1770(a)(7): Representing that goods are of a particular standard, quality, or grade when they are not;

- §1770(a)(9): Advertising goods with intent not to sell them as advertised;

- §1770(a)(14): Representing that a transaction confers rights or remedies it does not confer.

60. Tesla had actual knowledge of the defects through pre-release testing, internal safety validation failures, OTA anomaly logs, and NHTSA recall data but failed to disclose them.

Plaintiff relied on Tesla's misrepresentations and omissions in deciding to purchase the vehicle.

Plaintiff's reliance was reasonable because Tesla possessed exclusive knowledge of safety defects and withheld that information while simultaneously representing that the vehicle provided superior and validated collision protection.

Pursuant to Civil Code §1780(a), Plaintiff seeks:

- actual damages;

- punitive damages where permitted;

- recovery of attorney's fees and costs;

- injunctive relief requiring Tesla to cease deceptive practices; and

- any other relief the Court deems proper.

Plaintiff will serve a CLRA notice via certified mail pursuant to Civil Code §1782(a).Tesla's failure to correct these violations within thirty (30) days entitles Plaintiff to seek treble damages and attorney's fees under Civil Code §1780(e).

**TENTH CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT**

**California Civil Code §§1790–1795.8**

***(Against All TESLA DEFENDANTS)***

61. Plaintiff incorporates herein by reference all preceding paragraphs as though fully set forth herein.

62. Plaintiff purchased the subject 2022 Tesla Model Y in California for personal, household, and commuting purposes, making it a "consumer good" under Civil Code §1791(a).

63. Tesla is a "manufacturer" and "retailer" of consumer goods under Civil Code §1791(j).

64. Under Civil Code §1792, Tesla impliedly warranted that the vehicle was of merchantable quality and fit for ordinary purposes, including safe and reliable operation of collision-avoidance systems, airbags, AEB/FCW, and OTA safety firmware.

65. The subject vehicle was not of merchantable quality because it was unfit for the ordinary purposes for which such vehicles are used, including safe transportation, reliable collision avoidance, and the proper deployment of occupant-protection systems.

66. Tesla breached these warranties by providing Plaintiff with a vehicle containing dangerous defects, including failure of AEB, failure of FCW, airbag misdeployment, faulty accelerometer/gyroscope calibration, and systemic sensor-fusion failure.

67. The vehicle also failed to comply with express warranties under Civil Code §§1791.2 and 1793.2 because the safety systems did not operate as promised, and Tesla failed to repair or replace the defective vehicle after being notified of the defects.

68. Under Civil Code §1794, Plaintiff is entitled to recover:

- actual damages;

- a civil penalty of up to two times actual damages for willful failure to comply;

- costs and attorney's fees;

- rescission or replacement of the vehicle.

69. Tesla's failure to honor its obligations under the Act was willful, entitling Plaintiff to the maximum civil penalty. Tesla's willfulness is further demonstrated by its failure to disclose known safety defects at the time of sale, its refusal to adequately repair the defects when presented with pre-accident warnings, and its pattern of ignoring consumer complaints regarding identical failures.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff prays for judgment against DEFENDANTS, and each of them, as follows:

1. For general damages according to proof;

2. For special damages, including past and future medical and rehabilitation expenses;

3. For past lost earnings;

4. For future lost earnings and loss of earning capacity consistent with Plaintiff's status as a globally recognized AI scientist;

5. For damages for loss of professional opportunities, future innovations, and intellectual property;

6. For punitive and exemplary damages under Civil Code §3294;

7. For pre-judgment and post-judgment interest;

8. For costs of suit;

9. For such other relief as the Court deems just and proper.

Date:  December 3, 2025

NorCal Logistics Lawyers Group, P.C.

By: _____
Dominic G. Flamiano

Attorney for Plaintiff
Samaneh Movassaghi